In re RONNIE RAY ROBINSON et al., Minors—(THE PEOPLE ex rel. JAMES ROBINSON, Petitioner-Appellee, v. LINDA ROBINSON, Respondent-Appellant.)

(Nos. 74-224, 25 cons.;

Second District (1st Division)—April 23, 1975.

Roger Smith, of Reno, Zahm, Folgate, Skolrood, Lindberg, & Powell, of Rockford, for appellant.

Philip G. Reinhard, State's Attorney, and Andrews, Resh, & Frew, both of Rockford, for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

This appeal is from an order of the trial court changing the custody of two minor children from a foster home in Illinois to a grandmother residing in Arkansas. The children's natural mother has appealed. She contends: (1) that the trial court erred in receiving certain letters in evidence over her objection; (2) that, in order to justify such a change, changed circumstances must be shown; and (3) that the proof here does not establish such changes. We disagree with all three contentions and affirm.

The State filed two petitions in September of 1971, alleging that Ricky and Ronnie Ray Robinson were neglected minor children in that their environment was injurious to their health and that they had failed to receive proper and necessary medical care. Following a hearing, the trial court entered orders finding that both children were neglected minors and adjudged both to be wards of the court. The court then appointed a guardian for the children and directed the guardian to place the children in the care and custody of Mountain and Dorothy Hill, with whom the children's natural mother was staying at that time.

Approximately 2 years later, the children's natural father filed a petition for a change of custody alleging that the natural mother no longer lived with the Hills or visited the children since she was confined in a facility known as Shelter Village in Genoa, Illinois. The petition sought to have custody awarded to the children's paternal grandmother in Moark, Arkansas, where the petitioner planned to move, work, and regularly visit

them, so that the children would be reunited with their blood relatives. The grandmother appeared and testified. Petitioner also introduced, over respondent's objection, several letters from the Clay County, Arkansas, juvenile officer, highly recommending the grandmother and her home. The petitioner maintained below that it would be in the best interests of the children for them to live with their family. The respondent-mother maintained that the children should be kept with the Hills, where she could visit them, particularly in view of the petitioner's acknowledgment that the Hills had in no way neglected the needs of the children.

In addition to the paternal grandmother, the court heard testimony from the natural parents, the Hills, the respondent's sister, and the children's legal guardian. The court then granted the petition. The mother's motion to stay the transfer was denied and we assume that it has been carried out. The mother has now appealed.

At the outset, we note that the Hills were in no way accused of negligently caring for the children. Instead, the record shows that the trial court was primarily concerned with what it considered to be the children's best interests; namely, making it possible for the children to grow up among their family blood relatives. Testimony at the hearing established that the children's parents had migrated to Illinois from Arkansas. The paternal grandmother had already raised a generation of children and had room, money, time and the desire to raise more.

The purpose and policy of the Juvenile Court Act is to secure care and guidance for each minor, preferably in his own home, which will serve the minor's welfare and the best interests of the community; and the court will not remove a minor from the custody of his parents unless the minor's welfare and safety or the protection of the public cannot be safeguarded without removal (Ill. Rev. Stat. 1973, ch. 37, par. 701—2; see *People v. Hackman* (1971), 1 Ill.App.3d 1030, 275 N.E.2d 488). Further, as is plainly evident from a reading of the Act, the court is directed "* * * to preserve and strengthen the minor's family ties whenever possible * * *" (Ill. Rev. Stat. 1973, ch. 37, par. 701—2(1)). The court's decision to change custody of the minor children from the Hills to the paternal grandmother would appear to be well within the purpose and policy of the Juvenile Court Act.

■■ The question remains, however, whether, as respondent maintains, the petitioner was obligated to show any change of circumstances or neglect since entry of the court's prior order awarding custody to the Hills, in order to justify ordering a change of custody. In the first place, we conclude that such a change was established here in that it was shown (1) that the mother had left the Hill home shortly after the custody order; and (2) that the children's grandmother was capable

and now desirous of raising them. In the second place, we conclude that the petitioner did not have to make such a showing. This is so because "legal custody" under Illinois law is not "parenthood" or "adoption." Indeed, one who has legal custody is subject to removal at any time without such cause as must be established in a neglect proceeding. (*Stanley v. Illinois* (1972), 405 U.S. 645, 31 L.Ed.2d 551, 92 S.Ct. 1208.) As long ago as 1948, the Appellate Court for the Third District held that where the natural father of an adjudged minor dependent child had established that he was a fit and proper person to have custody of the child in that he could properly maintain, educate, and rear the child, then he was entitled to custody, regardless of the good character of the persons in whose custody the child had been placed by its guardian and notwithstanding their desire to care for and to rear the child (*Nees v. Thorsen* (1948), 334 Ill.App. 73, 78 N.E.2d 342). Therefore, petitioner here only had to show that the minor children's parental grandmother in Moark, Arkansas, was a fit and proper person to have their custody and that she could properly maintain, rear, and educate them, serving both the interests of the children and of the community.

██ The paternal grandmother appeared in court and testified that she was ready, willing, and capable of raising the children. The trial court concluded that she was and it was in a far better position to judge her credibility and capability than we are. Respondent certainly introduced no evidence which would refute the trial court's conclusion. We accordingly hold that the trial court properly concluded that the paternal grandmother was a fit and proper person to have custody of the children.

██ Respondent, however, contends that the trial court erred when it received in evidence, over her objection, three letters from the Clay County, Arkansas, juvenile officer which highly recommended the paternal grandmother. Respondent argues that the trial court's decision was swayed by the letters and that we ought to reverse. However, rules governing the admissibility of evidence are less strict in this type of proceeding. Thus, "* * * All evidence * * * including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing." (Ill. Rev. Stat. 1973, ch. 37, par. 705—1(1).) The letters complained of were therefore admissible and, in view of the paternal grandmother's own testimony in open court, we hold that the trial court's action did not constitute reversible error.

We therefore affirm the order changing the custody of the children.

Affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.